1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,          )
                                   )
                  Plaintiff,       )        No. CR 05-0381 TSZ
                                   )
        v.                         )        DEFENDANT'S MOTION FOR
                                   )        NEW TRIAL (F.R.Cr.P. 33)
AKRAM ASWAD ALMUSSA and            )
JOSHUA KEBEDE,                     )        Note For Motion Calendar: December
                                   )        29, 2006
                  Defendants.      )
                                   )

1.      Relief Requested. Defendant moves the Court for an order granting a new

trial on the basis that substantial justice was not achieved at the first trial.

2.      Statement of Facts.

**A.      Wrongful Withholding of Material Exculpatory Evidence**

Defendant went to trial on November 27, 2006 after having his motion for a

continuance denied. The Government had failed to reveal to the defense that it

had located a missing witness, Matthew McGhee and that the interview of him

had disclosed material exculpatory evidence tending to disprove two of the five

elements of the offense of wire fraud and conspiracy. Six business days before the

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33) - 1

ROBERT J. WAYNE, P.S.
PACIFIC POINTE, SUITE 100
2110 N. PACIFIC STREET
SEATTLE, WASHINGTON 98103
(206) 343-5100

1

2  start of trial, during the time reserved for final preparation of trial documents

3  due on November 20, 2006 and the preparation of witness examinations, the

4
5  Government provided a copy of the report of the investigation, buried within a

6  thick stack of documents.   During October and November, the prosecution had

7  sent three letters to the defense discussing and disclosing discovery.  Throughout

8  that period the Government was aware of the McGhee exculpatory evidence and

9  failed to disclose it.  None of the three letters mentioned Mr. McGhee.  The

10
11  letters have all been previously supplied to the Court.

12        The Court indicated to the Government that this conduct was beneath the

13  requirement of *Brady* and chided the Assistant United States Attorney.  Despite

14  the warning, the Government continued to withhold information regarding

15
16  Mr. McGhee for apparent strategic reasons.  The Government did not want to call

17  Mr. McGhee, despite having had a multi-hour proffer from him during the

18  weekend between the first and second week's of trial.  During that interview, the

19  Government learned that he had been discharged from one of his earlier jobs

20  because of an accusation of sexual misconduct with an employee.  The

21
22  Government obtained police reports and a letter from the lawyer for Mr. McGhee

23  in which certain admissions were made.  It is apparent from the fax header on the

24  letter that the Government had possession of the documents during the evening

25  of December 4, 2006.  The Government waited until after the defense had called

26  Mr. McGhee as a witness late in the day on December 6, 2006 and had spent the

27
28  last 30 minutes of that day on direct.  The information was not provided until the

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33)  - 2

1

2  following morning.  By then it was too late for the defense to undo the calling of

3  the witness.  The defense was forced on Wednesday to make a decision to call the

4  witness without having the full information known to the Government. The

5

6  defense had asked the Court on Wednesday, December 6, 2006 for permission to

7  call it's last witness on Thursday morning, rather than having to make the

8  decision with only 30 minutes left on Wednesday.  The Court denied that request.

9        The defense obtained the names of four potential supportive witnesses

10

11  from Mr. McGhees' lawyer  during the late afternoon of December 6, 2006 and

12  did not have an opportunity to interview them before having to make the decision

13  about calling Mr. McGhee to the stand.  This was not enough time to make

14  effective use of the *Brady* information regarding Mr. McGhee.  The defense

15  timely sought continuances both at the start of the proceedings and before having

16

17  to call the witness.  These requests for relief were both denied.

18        While the Court has denied the defense motions to dismiss for the *Brady*

19  violation and has declined to exercise it's supervisory powers to dismiss the case

20  for the violations of the ethical and legal requirements placed upon the

21

22  Government and it's lawyers, it is submitted that due process requires that the

23  wrongful consequences, namely a conviction contributed to by such wrongful

24  conduct, be undone and that Mr. Almussa be granted a new trial.

25  **B.**   **Misconduct in the Presentation of Evidence**

26        The Rules of Professional Conduct require that lawyers proceed with

27

28  candor to the tribunal before which they practice.  No lawyer is allowed to

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33) - 3

ROBERT J. WAYNE, P.S.
PACIFIC POINTE, SUITE 100
2110 N. PACIFIC STREET
SEATTLE, WASHINGTON 98103
(206) 343-5100

wilfully present perjured evidence and lawyers for the Government are under a particular requirement to do justice even if it means that the accused will go free. In this case the Government clearly presented perjured testimony by Mr. Kebede which was designed to put him in a false light that would increase his credibility and make him sympathetic to the jury.

The direct of Mr. Kebede by the AUSA left the following impressions:

1.  Mr. Kebede had only been involved in one previous deal before meeting Mr. Almussa.

2.  That previous dealing had resulted in no financial gain to Mr. Kebede.

3.  Mr. Kebede was best characterized as an ice cream seller with an interest in real estate at the time he met Mr. Almussa.

4.  Mr. Kebede first learned about double closings from Mr. Almussa, having never been involved in a double closing before.

5.  Mr. Kebede stopped dealing with Mark Koshraw before he met Mr. Almussa, because Mr. Koshraw had cheated him out of his share of that one prior dealing.

6.  Mr. Almussa came up with the idea of having false verifications of employment for false job titles.

None of the above was true. Yet when the prosecutor finished his direct examination that was the image he had given the jury through careful and detailed questioning of Mr. Kebede. While the prosecutor offers an excuse based

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33) - 4

upon a pre-trial order, that order only dealt with certain prior transactions; not the myriad of other false poses recited above. What's more, that pre-trial order did not give the Government license to paint with half-truths and mislead the jury at Mr. Almussa's expense.

To put this in context, the Government had long been aware that Mr. Kebede had actively suborned perjury and was of doubtful character. That should have put the Government on special alert to be careful with the witness. Having solicited the testimony that created this false image, the Government had a duty to correct it; not leave it to the defense to attempt to counter on cross examination. No one can say with confidence that the efforts of the defense made up for this elaborate disguising of Mr. Kebede. Cloaked in false colors, the trial was stained by the lies of this man, solicited through the careful guidance of an experienced prosecutor. The Government has come away with a conviction at the expense of the appearance of fairness.

While the Court may well have concluded that the Governmental misconduct did not justify dismissal, it should not permit the conviction of Akram Almussa to rest on a performance such as this. No one can say that the jury was unaffected by the testimony of Mr. Kebede.

Even after this Court rebuked the prosecution for its conduct, it happened again. In the testimony of Nancy Lalander the Government solicited testimony as follows:

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33) - 5

ROBERT J. WAYNE, P.S.
PACIFIC POINTE, SUITE 100
2110 N. PACIFIC STREET
SEATTLE, WASHINGTON 98103
(206) 343-5100

1

2    1.    Ms. Lalander met Mr. Almussa on two occasions.

3    2.    On the first occasion Mr. Almussa interviewed her and obtained

4          financial information that included her income and place of

5          employment.

6

7    3.    On the second occasion she was asked to sign various loan

8          documents by Mr. Almussa.

9    This story was not true and the attorneys for the Government knew it.

10   The unequivocal statement reported in the FBI investigatory report was that Ms.

11
     Lalander met Mr. Almussa on only one occasion for the purpose of signing
12

13   documents, not supplying information. It was Mr. Kebede who met and

14   interviewed her initially, not Akram Almussa. The lawyers for the Government

15   knew this because they had that report. But, when false information was given,

16
     the lawyers for the Government let it stand and did nothing to correct it.
17

18   If the transcript were available there would be other examples. For

19   instance, the Government had Ms. Estes testify that Mr. Almussa interviewed

20   her and obtained financial information on a draft Uniform Residential Loan

21   Application (HUD form 1003). In fact Defendant's Exhibit 42 demonstrated that
22
     she filled out one of the 1003s that Mr. Kebede was handing out (the form that
23

24   Mr. Khosraw had supplied that said Premiere Mortgage) and had faxed it back to

25   Mr. Kebede.

26   Ms. Raquel Sahagun was put on to testify that she directly supplied

27
     financial information to Mr. Almussa. The Government had interviewed Ms.
28

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33) - 6

1

2 Sahagun and Mr. Gonzalez. It turned out that the form was filled out by

3 Mr. Gonzalez while sitting with Ms. Sahagun; not by Mr. Almussa.

4

5

6

7

8

9

10

11

12

This was a trial peopled by perjurers, suborner's of perjury and straw
buyers each of whom had greater interest in avoiding prosecution. A criminal
conviction should not be an opportunity to lead such a parade without exercising
the utmost care to insure that justice is not compromised. The attorneys for the
Government showed little concern for such niceties and the result is one in which
no one should be proud to have been a participant. It would be a black mark on
justice to allow a conviction in such a trial to stand.

13 3.    Statement of Issues.  Should the Court permit the conviction of Akram

14       Almussa in a case replete with instances of perjury and in which the

15       Government introduced evidence that it knew to be false and failed to

16       correct that evidence?

17

18 4.    Evidence Relied Upon.  The defense relies upon the transcript of the

19 testimony and the declaration of Robert J. Wayne filed in support of this motion.

20 5.    Authority.

21

22

23

24

25

26

27

28

As outlined above the Government presented the testimony of witnesses in
such a manner as to put the key Governmental witness, Joshua Kebede, in a false
and more sympathetic light. Having solicited testimony that it knew to be false,
the Government failed to correct it and even attempted on re-direct to re-
emphasize and re-establish the assertion that Mr. Kebede had first learned about
double closings from Mr. Almussa. Despite a judicial rebuke for this conduct, the

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33) - 7

Government again failed to correct false testimony presented by Ms. Lelander that she had provided financial information directly to Mr. Almussa, when in fact the Government knew that the information had been given to Mr. Kebede. Numerous other instances of false testimony dot the transcripts of the testimony of Ms. Sahagun, Ms. Estes, Mr. Gonzalez and others called by the Government.

There are two precedents that are of the greatest importance here. The first is *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) and the second is the Ninth Circuit's en banc ruling last year in *Hayes v. Brown*, 399 F.3d 972 (2005) (en banc).

The rule in *Napue* is that a conviction based in part on false testimony that is uncorrected by the Government cannot stand if the testimony is at all material. Mr. Kebede's testimony went to the heart of the Government's case, describing the manner and means of both the conspiracy alleged in Count I and the scheme alleged in all the remaining counts. The defense called this to the attention of the Court in a timely manner and moved at the end of the case for the harshest remedy, dismissal of the indictment. The Court did not grant that motion, as motions for dismissal are disfavored in the law. That does not end the inquiry. *Napue* and its progeny stand for the proposition that a criminal conviction cannot rest on the uncertainty of justice created by the introduction of suc9h evidence. The case also represents the intention of the High Court to create a massive deterrent to Governmental misconduct, consistent with the continued ability to mount a proper prosecution of the accused.

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33) - 8

ROBERT J. WAYNE, P.S.
PACIFIC POINTE, SUITE 100
2110 N. PACIFIC STREET
SEATTLE, WASHINGTON 98103
(206) 343-5100

1

2  A conviction obtained by the introduction of perjured testimony violates due process if (1) the prosecution knowingly solicited the perjured testimony **or (2) the prosecution failed to correct testimony it knew was perjured**. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). ``A new trial is required if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (quoting *Napue*, 360 U.S. at 271, 79 S.Ct. 1173) (internal quotes and alterations omitted).

3

4

5

6

7

8  *United States v. Vaziri*, 164 F.3d 556, 563 (10th Cir. 1999)(emphasis added).

9      The failure to correct false testimony is a wrong in itself. It would be too easy

10

11  for the prosecutor to hide behind the notion of surprise at hearing testimony from

12  the witness that he knows to be false. Rather than countenance a position of

13  surprised observer, the highest court in the land made it clear that the prosecutor

14  has a duty to correct the testimony; not rely upon the attempts of the defense to do

15  so later, or the contradiction by other evidence. When the false testimony emerges

16

17  a prosecutor cannot just look the other way and move on. It is submitted that in this

18  case the Government's actions were far worse than simply looking the other way in

19  regard to Mr. Kebede. With that witness the prosecutor wove the fabric of the very

20  deceit, having Mr. Kebede testify that he had been in but one earlier transaction and

21  in that he had received nothing of value.[1]

22

---

23      [1]    The prosecutor made the argument that he was precluded from mentioning any previous transactions by virtue of a pre-trial order. That argument is disingenuous on its face given: a) the AUSA had the witness testify about a previous transaction (Carole King), the one in which he claimed to have been cheated by Mr. Khosraw; and b) the limitation was in the context of previous transactions involving Mr. Almussa, not Mr. Kebede. If that was truly the belief of the Government, than it would not have introduced the "I was cheated" transaction as a prelude to it's evidence against Mr. Almussa by Mr.

24

25

26

27

28  (continued...)

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33) - 9

As long ago as *Mooney v. Holohan*, 294 U.S. 103, 112 (1935), this Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with "rudimentary demands of justice." This was reaffirmed in *Pyle v. Kansas*, 317 U.S. 213 (1942). In *Napue v. Illinois*, 360 U.S. 264 (1959), we said, "**the same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears**." *Id.*, at 269. Thereafter *Brady v. Maryland*, 373 U.S., at 87, held that suppression of material evidence justifies a new trial "irrespective of the good faith or bad faith of the prosecution." See American Bar Association, Project on Standards for Criminal Justice, Prosecution Function and the Defense Function § 3.11 (a). When the "reliability of a given witness may well be determinative of guilt or innocence," nondisclosure of evidence affecting credibility falls within this general rule. *Napue, supra*, at 269. . . . A new trial is required if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . ." *Napue, supra*, at 271.

*Giglio v. United States*, 405 U.S. 150, 153-54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)

(emphasis added).

The test is whether the conduct of the prosecution is such as to undermine confidence in the outcome of the trial. *United States. v. Bagley*, 473 U.S. 667, 682 (1985).

Last year the Ninth Circuit en banc undertook the review of a *habeas* petition in which the petitioner had been convicted of murder. In that case the state of California had procured the testimony of a possible co-participant through an arrangement that involved transactional immunity and dismissal of other charges. Realizing that such a deal would compromise the credibility of the witness, the prosecutor had a clever idea. He made the deal with defense counsel

---

[1](...continued)
Kebede. Certainly, it does not provide license to create a false and misleading impression of Mr. Kebede to heighten his credibility before the jury.

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33) - 10

1

2   with the promise that the defense lawyer would not reveal the existence of the

3   deal to his client, the potential witness.  Thus, the witness would not be engaging

4   in perjury in denying that he was testifying because he had a deal to protect

5
6   himself; he would be unaware of the deal and lack the *mens rea* of perjury.  At the

7   same time his value as a witness would not be compromised.  The Ninth Circuit

8   granted *habeas* relief and vacated the judgment of conviction.

9       The Supreme Court has long emphasized "the special role played by
10      the American prosecutor in the search for truth in criminal trials."
        *Strickler v. Greene*, 527 U.S. 263, 281, 144 L. Ed. 2d 286, 119 S. Ct.
11      1936 (1999).  As we observed in *Commonwealth of The Northern
        Mariana Islands v. Mendiola*, 976 F.2d 475, 486 (9th Cir. 1992)
12      (citations omitted), *overruled on other grounds by George v. Camacho*,
13      119 F.3d 1393 (9th Cir. 1997) (en banc):

14          The prosecuting attorney represents a sovereign whose
            obligation is to govern impartially and whose interest in
15          a particular case is not necessarily to win, but to do
16          justice. . . . It is the sworn duty of the prosecutor to
            assure that the defendant has a fair and impartial trial.
17

18          One of the bedrock principles of our democracy, "implicit in any
        concept of ordered liberty," is that the State may not use false evidence
19      to obtain a criminal conviction. *Napue v. Illinois*, 360 U.S. 264, 269, 3
        L. Ed. 2d 1217, 79 S. Ct. 1173 (1959) (internal citation omitted).
20      Deliberate deception of a judge and jury is "inconsistent with the
        rudimentary demands of justice." *Mooney v. Holohan*, 294 U.S. 103,
21      112, 79 L. Ed. 791, 55 S. Ct. 340 (1935).  Thus, "**a conviction
        obtained through use of false evidence, known to be such by
22      representatives of the State, must fall under the Fourteenth
        Amendment**." *Napue*, 360 U.S. at 269 (citations omitted). "**Indeed, if
23      it is established that the government knowingly permitted the
        introduction of false testimony reversal is 'virtually
24      automatic**.'" *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir.
25      1991) (*quoting  United States v. Stofsky*, 527 F.2d 237, 243 (2d Cir.
26      1975)).

27

28

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33) - 11

1

2   **In addition, the state violates a criminal defendant's
3   right to due process of law when, although not soliciting false
    evidence, it allows false evidence to go uncorrected when it
4   appears**. *See Alcorta v. Texas*, 355 U.S. 28, 2 L. Ed. 2d 9, 78 S. Ct. 103
    (1957); *Pyle v. Kansas*, 317 U.S. 213, 87 L. Ed. 214, 63 S. Ct. 177
5   (1942).

6   *Hayes v. Brown*, 399 F.3d 972 (2005) (en banc) (emphasis added).

7   It is all too easy to underplay the misconduct here by saying that the cross-

8
    examination undid the harm. Such a conclusion would require the Court to
9
10  second guess the mental processes of twelve independent jurors. The perception

11  of the credibility of defense counsel in their minds is not known. A skillful and

12  articulate prosecutor had stood before them and urged testimony. Even after

13  soliciting the mis-information, that prosecutor repeatedly argued to the Court
14
    that what he had done was somehow proper because of a pre-trial ruling. The
15
16  jurors, who did not hear that argument, nevertheless saw a prosecutor who was

17  never rebuked before them for the misconduct and whose true-believer

18  confidence never waned. They may have chosen to believe that the cross-
19
    examination was so much smoke and mirrors and that the witness, Mr. Kebede,
20
21  had truly learned double closings from the accused and accepted the balance of

22  his testimony. Indeed, on re-direct the prosecutor again questioned the witness

23  about learning his craft from Mr. Almussa and had him repeat his assertion.

24  Thus, it would be hubris on the part of the undersigned to suggest that cross-
25
    examination undid all the damage and established the truth. It would be wishful
26
27  thinking on the part of anyone else to say that there was not "any reasonable

28

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33) - 12

ROBERT J. WAYNE, P.S.
PACIFIC POINTE, SUITE 100
2110 N. PACIFIC STREET
SEATTLE, WASHINGTON 98103
(206) 343-5100

likelihood" that the false testimony "could have affected the judgment of the jury."[2] *Hayes, supra* at 988.

Under the test of "could have affected" the inquiry is one of potential effects. If the jury devalued the cross examination or considered it collateral to the issues than the jury might well have continued to believe in Mr. Kebede, who stood to lose his plea bargain if his testimony was not honest. What did the jury actually believe? We will never know. But, the question of whether the jury could have believed in evidence that affected their judgment deserves to be answered in the affirmative.

There are two additional considerations to be taken into account. In closing argument defense counsel told the jury that the knowing solicitation of false testimony "cast doubt" over the entire prosecution.[3] However, if the Government had followed it's ethical and legal obligations to correct the evidence, the force of the defense argument would have been infinitely stronger. The effect

----

[2]

In assessing materiality under *Napue*, we determine whether there is "'any reasonable likelihood that the false testimony could have affected the judgment of the jury;'" if so, then "the conviction must be set aside." *Belmontes v. Woodford*, 350 F.3d 861, 881 (9th Cir. 2003) (*quoting United States v. Agurs*, 427 U.S. 97, 103, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976)).

Hayes, supra at 984. This standard does not require the Court to determine that the testimony actually did affect the jury; rather the inquiry is whether it had the potential to do so, in other words that it "could" have done so.

[3]     The Court had just instructed the jury that the comments of counsel are not evidence and are meant only to help interpret the evidence.

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33) - 13

1

2  of such a correction of a witness' false testimony was noted by the en banc Circuit

3  Court in *Hayes*.

4          The violation of the State's independent duty under *Alcorta* and

5  *Pyle* was also material, perhaps even more so. To avoid violating
   Hayes's due process rights by allowing false evidence to go uncorrected,

6  **the State would have been forced to disclose** to the jury after
   James testified that James's testimony concerning the lack of a deal

7  was false; that a secret deal was in place concerning prosecution for the
   other crimes; and **that the State had solicited James's testimony**

8  **to the contrary knowing that he would be providing false**

9  **evidence**. **Such a disclosure would have had a devastating**

10  **effect on the credibility of the entire prosecution case**.

11  *Hayes* at 988. The defense in this case was denied the ability to do so with any

12  apparent effect on the outcome.

13

14          Finally, a basis for imposing the remedy of a new trial is not only to insure

15  that this verdict does not rest upon perjured testimony, but also to create a real

16  deterrent to prosecutorial misconduct in the solicitation of false evidence. That

17  goal has yet to be achieved in this case. Consider that on the threshold of

18  starting this trial, the Court was confronted with the suppression of *Brady*

19

20  information concerning Mr. McGhee until six business days before the trial. The

21  Court also took under submission a defense motion to dismiss for the violation

22  and verbally admonished the prosecutor. The Court was clearly trying to send a

23  message to the prosecution that they were too close to an ethical line and that

24  they had better steer clear. That point was either lost on the U.S. Attorney's

25

26  Office or ignored.

27

28

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33) - 14

1

2          Before the Court had even ruled on the *Brady* issue, the prosecutor was off

3    soliciting the false testimony of Mr. Kebede. Again the Court was unequivocal in

4    it's condemnation of this behavior, telling the prosecutor that this was not fair

5    advocacy at all and that it was far short of the lofty goals of a fair trial. But, even

6
    after receiving that rebuke, there was a repeat of this behavior in the re-direct

7

8    examination and a variance on the pattern in the examination of Ms. Lalander,

9    with the uncorrected error in regard to the recipient of the financial information

10   at the first meeting.

11

12         If deterrence matters, than the Court's goal was not attained. Two

13   prosecutors have now learned how much they can get away with without

14   repercussions. The fairness of the product of two weeks of trial before a federal

15   court stands in grave question and no lasting lesson has been drawn. The

16
    prosecution should not be allowed to thwart justice. The defendant should not be

17

18   the one to lament at length the abridgment of proper and ethical conduct. This

19   Court should order a new trial so that any conviction is one that follows from an

20   legitimate record.

21

22
    **Mr. McGhee and the Late Disclosure of Brady and Impeachment**

23

24   **Evidence.**

25         As noted above, the defense sought a continuance before the start of the

26   trial so as to be able to make an efficient use of the late disclosed information

27

28

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33)  - 15

regarding Mr. McGhee. That would have permitted an investigation into his alleged supporting witnesses.

That was followed up by the denial of a thirty minute delay in offering Mr. McGhee's testimony. The defendant was put into the position of having to call his last witness, Mr. McGhee, at the end of the day on Wednesday before he was able to conduct the investigation of the possible supporting witnesses, whose names had just been provided. The defense was forced to commit to a course of testimony that may have proven fatal to it's position.

Unknown to the defense, the Government had obtained police reports and a letter regarding Mr. McGhee. Despite repeated warnings to the Government lawyers about late disclosure of information, the Government withheld that information until the following morning, after Mr. McGhee had taken the stand. Under these circumstances, the importance of that 30 minute delay became all the more significant. It is submitted that the cumulative effect of the rulings concerning Mr. McGhee had the effect of prejudicing the defense of Mr. Almussa and necessitate a new trial.

**CONCLUSION**

If deterrence is a goal in order to protect the integrity of the Court, then it has not been achieved. A criminal conviction should not be allowed to rest on a record such as this. But, moreover, the Court should not let this case be a model of how much can be tolerated and still sustain a verdict that will forever change the course of this man's life; his liberty, his integrity and his ability to remain in

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33)  - 16

ROBERT J. WAYNE, P.S.
PACIFIC POINTE, SUITE 100
2110 N. PACIFIC STREET
SEATTLE, WASHINGTON 98103
(206) 343-5100

1

2  this country with his wife and child.  It is one thing to witness the conduct that

3  went on during the trial; it is another to sanction it.

4       Dated this 16th day of December, 2006.

5

6                                             ROBERT J. WAYNE, P.S.

7

8

9                                             ROBERT J. WAYNE, Attorney
                                              For Defendant, Akram Almussa
10                                            WSBA # 6131

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33) - 17

1

2                           CERTIFICATE OF SERVICE

3          The undersigned certifies that a copy of this document and the Declaration

4    of Robert J. Wayne in support of the motion for a new trial were served upon

5
     counsel of record at their E-mail addresses via the ECF system in place in the
6

7    Western District of Washington, on this 16th day of December, 2006.

8          Dated this 16th day of December, 2006 at Seattle, WA.

9

10                                    /s/ Robert J. Wayne

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION FOR
A NEW TRIAL (RULE 33) - 18                                    ROBERT J. WAYNE, P.S.
                                                         PACIFIC POINTE, SUITE 100
                                                           2110 N. PACIFIC STREET
                                                        SEATTLE, WASHINGTON 98103
                                                              (206) 343-5100